CINCINNATI SOUTH. R. Co. *et al. v.* CHATTANOOGA ELECTRIC STREET-RAILWAY CO.

WESTERN & A. R. Co. *v.* SAME.

*(Circuit Court, E. D. Tennessee, S. D.* December 24, 1890.)

RAILROAD COMPANIES—CROSSINGS—INJUNCTION—HIGHWAYS.

　　Where a county court declares a road to be open as soon as certain fences are set and other conditions complied with, and the proposed road is left with railroad tracks, fences, and embankments crossing it for 11 years thereafter, and there is no proof that any of the said conditions were ever fulfilled, the county authorities have no right to grant a street-car company permission to lay its track along such road without the consent of the railroad company, and the laying of such track may be enjoined at suit of the railroad company.

In Equity. Bill for injunction.
*Lewis Shepherd,* for complainants.
*Clark & Brown,* for defendant.

KEY, J.   The railroads owned by complainants run parallel for several miles; that is, from Chattanooga to Boyce.   To a stranger, their tracks would appear to be a double track belonging to the same road. The defendant is attempting to lay its track across these roads, at a point between Chattanooga and Boyce, and the bills are filed to enjoin and prevent this.

The defendant has taken no steps looking to a condemnation of the property of complainants so far as defendant's use of it is concerned; nor has it offered, nor does it admit that it is liable, to make any compensation for its appropriation.   The point of crossing is beyond the city limits, but within the county, and the defendant insists that it has, according to the requirements of law, authority to cross complainants' roads, by reason of the action of the county court of the county, without the consent of complainants, and in opposition to their will.   The contention of the defendant is that the Harrison Avenue road which, it is said, crosses the railroads at the point at which defendant proposes to cross them, is a public road duly established by the county court, and that the county court has given authority to defendant to cross them.   Unquestionably the county court has the jurisdiction to lay out and establish public roads.   It also has power to consent that the defendant may run along the public roads of the county, but in each case the law imposes legal methods and limitations.   All must be done in compliance with the law.   Is there such a public road at the place of the proposed crossing as authorizes the county court to allow the defendant to use complainants' road-bed and right of way without their consent or compensation?   The complainants were here first.   They purchased and paid for the lands they have.   They graded their road-beds, laid their tracks, and had equipped and operated their roads before defendant had an existence.   The complainants allege that the business of their railroads has so·increased that it is necessary, in order to properly handle their freights and freight-cars, to build sidings, switches, etc., between Boyce and Chattanooga, upon the lands they own along their tracks; that some sidings and switches have already been built, and that they will proceed to build others.   Defendant denies this, but which is the court to believe?   And if it should turn out that this point has been determined upon as one where these sidings, switches, etc., are to be used and built, it would very seriously interfere with the operations of all parties to allow defendant's track to cross through complainants' switch-yards, and thus destroy or seriously burden and impair the use to which the property had been, or even might be, conveniently appropriated, especially when no compensation is offered, and liability therefor is denied.   The legal maxim is, "So use your own as not to injure your neighbor."   In the case under consideration, however, the defendant would be allowed to use the property of its neighbor in such a way as to injure that neighbor.

But admit that all this might be done under the law, has it been done?   The defendant insists that there was a public road at this crossing many years ago, and introduces affidavits in support of that position.

The action of the county court and subsequent events overthrow that idea. There was occasionally some use of it, but no such use is proven as would justify the inference that there had been a dedication of this property to its use as a public road, and the fact that the county court appointed a jury of view to report upon the laying out of the road is opposed to the theory that it had previously established such a road, or that it already existed. The county court, at its October term, 1879, ordered—

"That Robert Simpson, L. B. Headrick, Patrick Gamble, Jacob Kunz, H. H. Knox, and E. B. Edwards, or any five of them, be appointed a jury of view to report upon the discontinuance of the old road described in the pleading, and to lay off a new road designated in the petition until it intersects the present Shallow Ford road, intersecting McCallie street in the city of Chattanooga."

At the January term, 1880, of the county court, this jury reported, recommending that the new road be opened up as soon as the land-owners, who have consented to open same free of charge to the county, set in their fences, and when Manz shall have made a road round his southwest corner, and down his and Ruobs' line to old Shallow Ford road, then Shallow Ford road shall be discontinued as a road through his land; and when said Headrick and Henderson's heirs shall have opened a road along their western line to Bird's Mill, or McCallie-Street road, then said old Shallow Ford road shall be discontinued through their land. The court adopted the report, and ordered it spread upon record; and "that the road be declared open as soon as the conditions in said report be complied with." Whether this was declaring the road open when the conditions should be complied with, or was an order of promise of the court that the court would declare it open after the conditions were performed, is not material. The order did not open the road absolutely, but conditionally; and the road could not be open in law or in fact until the conditions became accomplished facts. We have no evidence of such a result, but the contrary appears. The action of the county court occurred in the latter part of 1879, and first of 1880. Blackford, in his affidavit, says that he thinks that the first train of the Cincinnati Railroad arrived here in the latter part of 1879. It must be that the action of the county court and the building and opening of that railroad to business were contemporary events. The railroad raised such an embankment at the place in controversy that defendant has to build trestles so as to reach the grade of the tracks of the railroads. The Cincinnati Southern road built a wire fence along the line of its right of way, and no effort for many years was made to open the way by indictment or otherwise, but these obstructions have been allowed to remain. The road to this good day, 11 years after the action of the county court, has not been opened. There is no road graded for or by the public over this proposed cross-way. The law does not intend that a city or county may declare a street or road open, and, without opening it in fact, give a street railroad authority to use it, and to that end open it. The county must have a road, not only established, but opened for the use of the

public, before it can give the right to a street railway to use it. It is the road, not the place where the road may be made, which is the thing dealt with. If a city or county may declare a street or road open, and then, without actually building the street or road, grant permission to a street railroad to use it, and if this should authorize the street railroad to open and use it, it might never be used, in fact, as a street or road by the public, but simply as a street railroad, without the easements costing it a dollar. The city or county would pay for the right of way. Suppose the city of Chattanooga should declare a new street open across all the tracks of the switch-yards of the various railroads that come within the city, and then, without opening the street in fact, should permit a street railroad to use the street, it would hardly be insisted that authority so granted would confer absolute power upon the street railway to open up and use such street. It will hardly be contended that a court of equity might not interpose to prevent such an injury to the railroads as would result, and danger to the public as would necessarily follow. This is an extreme case, to be sure, but sometimes extreme cases illustrate a principle.

The conclusion reached is: *First.* The county has not established and opened the road which, it is claimed, crosses at the point defendant proposes to build its track over the railroad tracks. *Second.* That if the road had been opened and established by the county court, defendant would not be allowed to cross and use complainants' road-beds and rights of way without compensation to complainants. Therefore an injunction is granted, as prayed for, as to Harrison Avenue road, but not as to East End avenue. It has not been deemed necessary to pass upon the other questions raised, and so ably argued by counsel, at this stage of the case.